UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH OWENS,

        Plaintiff,        Case No. 2:13-cv-227

v.        HON. ROBERT HOLMES BELL

SENTA ROSE,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by state prisoner Joseph Owens pursuant to 42 U.S.C. § 1983. The defendant in this case is Senta Rosa. Defendant Rosa has now filed a motion for summary judgment (docket #56), asserting that she was not deliberately indifferent to plaintiff's medical condition and that she did not violate his Fourteenth Amendment rights. Plaintiff filed a response to defendant Rosa's motion for summary judgment (docket #59) on November 7, 2014. Defendant Rosa replied to plaintiff's response (docket #63) on November 21, 2014. Upon review, I recommend that defendant Rosa's motion for summary judgment be granted.

        Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Emps.*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

On August 16, 2011, Dr. Robert T. McQueeney diagnosed plaintiff as suffering from adjustment disorder with mixed anxiety and depressed mood, and antisocial personality disorder. Dr. McQueeney noted in plaintiff's medical records that prior to this diagnosis, "[Plaintiff] has not been determined to be mentally ill by the clinicians who have seen him previously." Docket #69-2, p. 2-3. Plaintiff asserts that in 1998, he was diagnosed with an explosive disorder. However, plaintiff provides no medical record showing such diagnosis, and Dr. McQueeney clearly annotated that "[Plaintiff] does not have [symptoms] consistent with intermittent explosive disorder." Docket #69-2, p. 3. During this medical exam, plaintiff admitted to previously lying about his diagnosis while in county jail, so that he "could get something strong to help [plaintiff] sleep." Docket #69-2, p. 2. Dr. McQueeney prescribed plaintiff multiple medications, which were continued until January 24, 2012.

The decision to discontinue plaintiff's medications stemmed from: the ineffectiveness of the medications; plaintiff's noncompliance in using the medications; and plaintiff's desire to continue psychotherapy without using psychotropic drugs. Additionally, it was determined that plaintiff's adjustment disorder had been resolved. Plaintiff asserts that on March 3, 2012, Mark Boshow diagnosed plaintiff with adjustment disorder with mixed anxiety and depressed mood

explosive disorder. However, there is no mention of this diagnosis in plaintiff's medical records, and plaintiff offers no evidence that he was examined by Mr. Boshow. On April 4, 2012, plaintiff was prescribed Haldol for agitation, violence, and self injurious behavior; and, the following day, plaintiff was transferred to the Chippewa Correctional Facility.

On June 27, 2012, Dr. Kirtida Patel performed a psychiatric evaluation on plaintiff. Dr. Patel's evaluation noted:

> [Plaintiff was treated with a] variety of medications, [he was noncompliant], no evidence of psychosis or mania, change in diagnoses to adjustment disorder with anxiety 8/16/11, did well for months without medication, started acting out when placed in segregation, placed on Haldol and [C]ogentin, [he was] noncompliant, was seen via telemed for psychiatric evaluation due [to the] possibility of reports of voices being feigned. During the evaluation Mr. Owens gives inconsistent information, contradictory information and shows no evidence of signs or symptoms suggestive of mental illness on Axis 1.

Docket #69-2, p. 7. Dr. Patel confirmed Dr. McQueeney's diagnosis of antisocial personality disorder, but found plaintiff was not suffering from other mental illnesses. Therefore, Dr. Patel discontinued plaintiff's Haldol and Cogentin prescriptions, dismissed plaintiff from outpatient treatment, and placed plaintiff on a K6 plan. A K6 plan lasts six months and entails a monthly review of plaintiff's mental health.

In accordance with the K6 plan, plaintiff was evaluated by D.O. Jason O. Mensah on October 26, 2012, via telemed. Plaintiff's medical records indicate that during this meeting, plaintiff "[denied] any psychiatric symptoms and report[ed] using exercise as a way of defusing stress. [Plaintiff] denies any thoughts of wanting to harm self or others." Docket # 69-3, p. 2. It is

3

important to note that, at this time, plaintiff was not taking psychotropic medications. On November 28, 2012, plaintiff was transferred to the Alger Correctional Facility.

Plaintiff was first assessed by defendant Rosa on December 6, 2012. During the assessment, plaintiff stated that he wanted to be placed back on his mediation. However, defendant Rosa noted that plaintiff was unable to identify any signs or symptoms that would warrant the scheduling of a psychiatric evaluation. Furthermore, his assessment states that:

> During the interview, [plaintiff] demonstrated average abstract reasoning and a good vocabulary. He wrote something at [defendant Rosa's] request and the spelling of the words were all perfect. His sentence structure and grammar were very good. His words were well organized. His verbalizations were well paced and lucid.
>
> Staff in his unit were interviewed. Several prisoners have come forward and complained that [plaintiff] is pressuring them for money and each of these prisoners have CSC convictions. They claim he is a leader of a group of prisoners involved in [t]his pressuring activity. Staff report that they have observed that he appears to be a leader of other prisoners right from his arrival at LMF. He appeared very comfortable in his new surroundings and had no problems adjusting. He has not needed any assistance from staff and maintains his ADL's and functions normally.
>
> There appears to be no need for any mental health intervention at this time. QMHP staff will monitor his MSE PRN and according to policy. He is on the K plan until early May 2013.

Docket #69-5, p. 2. Plaintiff asserts that housing unit staff were never interviewed by defendant Rosa, and that certain staff members believe that he requires psychiatric evaluation. Plaintiff offers no names or affidavits that would substantiate this assertion.

On December 31, 2012, defendant Rosa examined plaintiff again. Plaintiff showed no signs of mental health issues, but defendant Rosa noted that "his demand for psychotropic medication appears to be medication seeking. A file review indicates a significant polysubstance

4

dependency problem per his last CPE." Docket #69-7, p. 2.  On April 16, 2014, plaintiff again asserted that he was suffering from mental illness, but appeared to be asymptomatic.  Defendant Rosa further noted, "[Plaintiff] reported several times in the interview 'I need my meds because I need to get out of LMF.'  He appears to be requesting medication for the secondary gain of a transfer."  Docket #69-6, p. 2.

Defendant Rosa contends that she is entitled to summary judgment on plaintiff's Eighth Amendment claim.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates.  *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. Apr. 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate

5

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In the instant case, plaintiff has failed to establish the objective component of an Eighth Amendment claim. Plaintiff's mental illness is not readily observable. Therefore, in order for plaintiff's claim to succeed, he must proffer medical evidence showing that he was harmed by a delay in treatment. *See Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Plaintiff asserts that, due to being deprived of medications, he suffers from depression, difficulty sleeping, and violent outbursts. However, this contention is not reflected in plaintiff's medical records, which show that plaintiff often claims to have a mental illness, but is asymptomatic. Plaintiff offers no medical evidence that would contradict his prison medical records. Therefore, plaintiff has failed to establish the objective component of an Eighth Amendment claim. Moreover, even if plaintiff could prove that he suffered an injury, his claim would still fail because he has not established the subjective component of an Eighth Amendment claim.

The Sixth Circuit distinguishes "between cases where the complainant alleges a complete denial of medical care and those cases where the claim is that a prisoner received

6

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004).

Plaintiff was repeatedly evaluated by defendant Rosa, and each time she determined that plaintiff was not in need of a mental health evaluation. Plaintiff offers no medical evidence to show that defendant's assessments were incorrect, or that they were fraudulently generated. Instead, plaintiff merely disagrees with defendant's diagnosis. Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). Therefore, defendant Rosa is entitled to summary judgment on plaintiff's Eighth Amendment claim.

Defendant Rosa asserts that she is entitled to summary judgment on plaintiff's Fourteenth Amendment claim as well. It is well established that a party cannot be held liable under § 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See, e.g., Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). Plaintiff asserts that he was statutorily entitled to a hearing when Dr. Patel discontinued his medications. Whether or not this is true is irrelevant, because at no time does plaintiff make any connection between the decision to deny

plaintiff a hearing, and defendant Rosa's impact on that decision. When Dr. Patel discontinued plaintiff's medication, defendant Rosa was working at another facility, and nothing in the record suggests that she had any correspondence with Dr. Patel, or that she influenced any decisions regarding plaintiff's mental health treatments before his transfer to the Alger Correctional Facility,. Because defendant Rosa was not involved in the decision to discontinue plaintiff's medications, she is entitled to summary judgment on his Fourteenth Amendment Due Process claim.

For the foregoing reasons, I recommend that defendant Rosa's motion for summary judgment (docket #56) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

Dated: August 7, 2015　　　　　　　　　　/s/ TIMOTHY P. GREELEY
　　　　　　　　　　　　　　　　　　　　TIMOTHY P. GREELEY
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).